IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD SATISH EMRIT,<br><br>*Plaintiff*,<br><br>v.<br><br>PNC BANK,<br><br>*Defendant*. | Civil Action No. 2:21-cv-1057<br><br>Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

*Pro se* Plaintiff Ronald Satish Emrit ("Emrit") filed this lawsuit against Defendant PNC Bank ("PNC), claiming that his three PNC bank accounts were "closed unexpectedly" in 2020 without sufficient reason.[1] Emrit asserts that he was injured from the closure of his bank accounts because there was a delay in receiving an economic stimulus payment from the IRS (although, he concedes that he later recovered the payment), (ECF No. 3, ¶¶ 17–18, 20), and he "believes" the closure negatively impacted his credit rating and ability to get a mortgage, *id.* ¶¶ 19–20. (*see also* ECF No. 12, p. 1). His Complaint contains the following seven claims: Count

---

[1] Emrit filed identical lawsuits in the Eastern District of Pennsylvania (Case No. 2:21-cv-03623), the Southern District of West Virginia (Case No. 2:21-cv-0446), the Eastern District of Virginia (Case No. 21-cv-00512), the Western District of Virginia (Case No. 21-cv-0029), and the Middle District of Pennsylvania (Case No. 1:21-cv-01386). The Southern District of West Virginia case was transferred to this Court on August 10, 2021, docketed at Case No. 21-cv-01092, and closed on August 19, 2021 by Order of Court, the Middle District of Pennsylvania case was transferred to this Court on August 7, 2021, docketed at Case No. 21-cv-01091, and closed by August 19, 2021 Order of Court, the Eastern District of Virginia dismissed Emrit's complaint on August 18, 2021, without prejudice, on January 13, 2022, in the Western District of Virginia case, Emrit's complaint was dismissed for failure to state a claim, and the Eastern District of Pennsylvania case was transferred to this Court on February 3, 2022, docketed at Case No. 2:22-cv-00199, and closed by February 7, 2022 Order of Court.

One – "The Material Breach of Contract"; Count Two – Negligence; Count Three – Conversion; Count Four – Products Liability; Count Five – "Breach of Implied Warranty of Fitness for a Particular Purpose"; Count Six – "Breach of Implied Warrant of Merchantability"; Count Seven – "Breach of Banking and Usury Laws Affiliated With Federal Trade Commission (FTC), Consumer Financial Protection Board (CFPB), Federal Reserve, and Dodd-Frank." (*Id.*, pp. 5-8). PNC filed a Motion to Dismiss for Failure to State a Claim and supporting brief. (ECF Nos. 8 and 9). The matter is fully briefed and ripe for adjudication. The Court will grant PNC's motion and dismiss this lawsuit for failure to state a claim upon which relief can be granted.

## I. STANDARD OF REVIEW

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *see also DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262–63 (3d Cir. 2008). Although this Court must accept the allegations in the Complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must

be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

Complaints brought *pro se* are afforded more leeway than those drafted by attorneys. In determining whether to dismiss a complaint brought by a *pro se* litigant, a federal district court is "required to interpret the *pro se* complaint liberally." *Sause v. Bauer*, 138 S. Ct. 2561, 2563 (2018). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Therefore, in keeping with its duty to "construe *pro se* complaints liberally ... [the Court] will consider" additional facts included in Emrit's filings that came after the Complaint to the extent they are consistent with the allegations in the Complaint. *Bush v. City of Philadelphia*, 367 F. Supp. 2d 722, 725 (E.D. Pa. 2005).

## II. ANALYSIS

Emrit has filed no fewer than 200 civil actions in federal district courts since 2013. The Middle District of Florida issued a "Vexatious Litigant Order" in a case Emrit filed there, barring

him from filing any new document in that district without first obtaining written approval of its Senior Magistrate Judge. *Emrit v. Devos*, Case No. 20-cv-773, Docket No. 11 (M.D. Fla. Apr. 20, 2020). Many of Emrit's other actions have been dismissed as frivolous, malicious, or for failure to state a claim. *See e.g., Emrit v. Cheap-O-Air*, Case No. 13-cv-803 (D. Md. April 1, 2013); *Emrit v. Viacom/MTV*, Case No. 13-cv-4909 (S.D.N.Y. July 25, 2013); *Emrit v. Office Depot*, Case No. 13-cv-80750 (S.D. Fla. Aug. 7, 2013); *Emrit v. Nat'l Academy of Recording Arts & Sciences*, Case No. 13-cv-5050 (S.D.N.Y. Aug. 19, 2013); *Emrit v. Washington State Bar Ass'n*, Case No. 13-cv-1389 (W.D. Wash. Sept. 10, 2013); *Emrit v. Nat'l Academy of Recording Arts & Sciences*, Case No. 13-cv-4742 (S.D.N.Y. Sept. 30, 3013); *Emrit v. Viacom/MTV*, Case No. 13-cv-4741 (S.D.N.Y. Oct. 15, 2013); *Emrit v. Nat'l Academy of Recording Arts & Sciences*, Case No. 13-cv-4736 (S.D.N.Y. Jan. 28, 2014); *Emrit v. AOL Time Warner, Inc.*, Case No. 14-cv-314 (S.D.N.Y. Feb. 14, 2014); *Emrit v. Archdiocese of Miami*, Case No. 14-cv-20910 (S.D. Fla. March 11, 2014); *Emrit v. Miami-Dade Cnty. Pub. Hous. and Cmty. Dev.*, Case No. 14-cv-20890 (S.D. Fla. March 12, 2014); *Emrit v. Sarasota Housing Auth.*, Case No. 14-cv-565 (M.D. Fla. April 22, 2014). Although not subject to immediate dismissal as frivolous, Emrit's Complaint will be dismissed because, even construing his claims liberally, he has failed state any claim upon which relief can be granted.

### A. Count One will be dismissed.

Emrit alleges in Count One of his Complaint that PNC committed a material breach of contract when it closed his bank accounts without providing a sufficient reason and then rejected an incoming IRS direct deposit stimulus payment.[2] (ECF 3, ¶¶ 16, 21-25; ECF No. 22, ¶ 1). To

---

[2] Although not specifically explored by the parties, the first issue that the Court must determine in adjudicating PNC's motion is the applicable law for Emrit's state law claims. "The Third Circuit has instructed that before a district court applies the applicable choice-of-law analysis it

4

state a breach of contract claim, Pennsylvania law requires that a plaintiff allege a valid contract, its breach and ensuing damages. *See Ironshore Specialty Ins. v. Conemaugh Health Sys., Inc.*, 423 F. Supp. 3d 139, 150 (W.D. Pa. 2019); *see also McShea v. City of Philadelphia*, 995 A.2d 334 (Pa. 2010) (a breach of contract claim requires: 1) the existence of a contract and its terms; 2) a breach of the duty imposed by the contract; and 3) damages that resulted). Pennsylvania contract law recognizes the "firmly settled" point that "the intent of the parties to a written contract is contained in the writing itself." *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 92–93 (3d Cir. 2001) (quoting *Krizovensky v. Krizovensky*, 624 A.2d 638, 642 (Pa. Super. 1993)).

PNC attached to its Memorandum of Law a copy of the Account Agreement For Personal Checking, Savings and Money Market Accounts ("Agreement") that governed Emrit's three bank accounts.[3] (ECF No. 9-1). It argues that Emrit's breach of contract claim fails as a matter

---

must first determine whether a conflict of law actually exists pursuant to a three-step inquiry." *Riffin v. Conrail Corp.*, 363 F. Supp. 3d 569, 575 n. 4 (E.D. Pa.), *aff'd*, 783 F. App'x 246 (3d Cir. 2019) (citing *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007)). "This inquiry includes, first, a determination whether an actual or real conflict exists between the laws of the jurisdiction at issue." *Id.* Only if there is an actual conflict must the court proceed to the second and third inquiries. *Id.*

Emrit failed to plead where and when he was "informed that his bank accounts with PNC Bank would be closed unexpectedly [. . .]." (ECF No. 3, ¶ 16). And, he only states that, "a direct deposit from the IRS as a stimulus check in the approximate amount of $600.00 was rejected by PNC bank where the IRS tried to place that revenue in one of plaintiff's checking accounts with PNC Bank." (*Id.* ¶ 17). PNC, which is headquartered in Pennsylvania, proceeds from the position that Pennsylvania law applies. Emrit, who resides in Florida and opened his bank accounts in Maryland, does not dispute PNC's position. Since Emrit has not identified any state law that might arguably apply to his claims and that presents an "actual or real conflict" with Pennsylvania law, the Court will apply Pennsylvania law.

[3] Generally, "a district court ruling on a motion to dismiss [under Rule 12(b)(6)] may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.). However, there are a few exceptions to that general rule. A district court may consider the following: (1) exhibits attached to the complaint, *see Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993);

of law because his claim is contradicted by the Agreement, which specifically states, "You or the bank can close your Account at any time by providing written notice." (ECF 9-1, pp. 13, 45). Emrit does not dispute that he received notice. His issue is with the sufficiency of the explanation provided by PNC as to why it was closing his accounts. Emrit has failed to identify a specific contractual term of the Agreement that PNC has breached, and it cannot be said that PNC breached any duty as the Agreement clearly and specifically states that PNC could close his bank accounts at any time. Emrit has failed to plead a plausible claim for breach of contract as a matter of law. Count One will be dismissed with prejudice.

**B. The tort claims (Counts Two, Three, and Four) will be dismissed.**

PNC argues that Emrit's tort claims–i.e., negligence (Count Two); conversion (Count Three); and products liability (Count Four)–are barred by the "gist of the action" doctrine. (ECF No. 9, pp. 9-11). The Court agrees, and these counts will be dismissed.

The gist of the action doctrine precludes a plaintiff from pursuing a tort claim that arises out of the contractual obligations of the parties. The Pennsylvania Supreme Court provided a magisterial examination of the doctrine in *Bruno v. Erie Insurance Co.*, 106 A.3d 48 (Pa. 2014). In *Bruno*, the Pennsylvania Supreme Court explained that the historic origin of the doctrine stems from the common-law distinction between actions proceeding on a writ of assumpsit and those on a writ of trespass. The Pennsylvania Supreme Court explained that even after the distinction between the writ-based forms of action was alleviated, Pennsylvania courts generally

---

(2) documents that are "integral to or explicitly relied upon in the complaint," *Burlington*, 114 F.3d at 1426 (citation omitted), including, for example, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," *Pension Benefit*, 998 F.2d at 1196; and (3) matters of public record, *Pension Benefit*, 998 F.2d at 1196. The Court concurs with PNC that "the Agreement is integral to the Complaint as it forms the basis for and provides the essential terms for Plaintiff's Breach of Contract claim." (ECF No. 9, p. 2 n.1).

6

maintained a sharp distinction between claims that arise out of the obligations in parties' contracts and those imposed as a matter of general social duty. Parties are not permitted to recast in tort what is actually a claim under their contract. Thus, if the "gist" of an action sounds in contract, a tort claim may not be asserted on the same occurrence and transaction.

The Pennsylvania Supreme Court explained that a determination of whether an action is properly lodged as a claim in tort or contract depends on the nature of the duty breached as set forth in the complaint:

> The general governing principle which can be derived from our prior cases is that our Court has consistently regarded the nature of the duty alleged to have been breached as established by the underlying averments supporting the claim in a plaintiff's complaint, to be the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract. In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, e.g. for negligence, is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Id.* at 68 (internal citations omitted); *see also Dommel Prop. LLC v. Jonestown Bank & Tr. Co.*, 626 F. App'x 361, 364 (3d Cir. 2015) ("The gist of the action doctrine precludes tort claims where the true gravamen, or gist, of the claim sounds in contract.").

The gist of the action doctrine bars a tort claim that "essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of the contract." *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 19 (Pa. Super. 2002) (quotation omitted). "To evaluate whether the gist of the action doctrine applies, a court must identify the duty breached, because the nature of the duty alleged to have been breached . . . [is] the critical determinative

7

factor in determining whether the claim is truly one in tort, or for breach of contract." *Downs v. Andrews*, 639 F. App'x 816, 819 (3d Cir. 2016) (quoting *Bruno*, 106 A.3d at 68). Although predating *Bruno*'s comprehensive exploration of the gist of the action doctrine, a decision of the United States District Court for the Eastern District of Pennsylvania provided an accurate analysis under Pennsylvania law where a tort claim will be barred by the gist of the action doctrine:

> The doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 619-20 (E.D. Pa. 2010).

Emrit's negligence, conversion, and products liability claims cannot stand in light of the gist of the action doctrine because they cannot be separated from the parties' contractual relationship. Emrit has alleged that PNC closed his three bank accounts without giving him sufficient reason. (ECF No. 3, ¶ 16). This allegation, the language of the parties' Agreement and the factual recitation set forth by Emrit in his Complaint lead to the unavoidable conclusion that Emrit's negligence, conversion, and products liability claims arise solely from the parties Agreement, that the duties allegedly breached were created and grounded in the Agreement, and that any possible liability stems from that contract. In other words, Emrit's tort claims sound in contract. They are, quite simply, duplicative and redundant of his breach of contract claim.

Courts have cautioned against dismissal based on the gist of the action doctrine before discovery is conducted. *See Addie v. Kjaer*, 737 F.3d 854, 868 (3d Cir. 2013) (noting that applying the doctrine generally involves a fact-intensive undertaking by a court). This is not, however, an inflexible position, and there is no question that where, as pled, a tort claim cannot

8

be separated from the parties' contractual relationship, the Court need not permit discovery on a futile claim. Moreover, an examination of the caselaw where courts deny a motion to dismiss shows that in many, if not most cases, the tort that was pled was one of misrepresentation (fraud in the inducement) which does not relate to performance of the contract, but to its formation. *See, e.g., Little Souls, Inc. v. State Auto Mut. Ins. Co.*, No. 03-5722, 2004 WL 503538, at *2–3 (E.D. Pa. Mar. 15, 2004) (denying a motion to dismiss where plaintiff alleged "misrepresentations occurred both before and after the formation of the contract"). There is no question that courts have granted motions to dismiss based on the gist of the action doctrine where the claims relate to the performance of the contract, even where the tort claim was presented as one for fraud. *See Caudill Seed & Warehouse Co. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 834 (E.D. Pa. 2000) (the court recognized that although "caution should be exercised in determining the gist of an action at the motion to dismiss stage," it still dismissed the claim because "the agreement [was] at the heart of plaintiff's ongoing fraud claim . . . ."); *Galdieri v. Monsanto Co.*, 245 F. Supp. 2d 636, 651 (E.D. Pa. 2002) (barring fraud claims under the gist of the action doctrine because the fraud claims were "intertwined" with breach of contract claims).

The only allegations seemingly supporting Emrit's tort claims relate to the performance under the contract, not its formation. Discovery in this case is not reasonably likely to demonstrate that the claims—as pled—stem from duties outside the bounds of the parties' Agreement. As such, the Court can determine at this time that Emrit's negligence, conversion, and products liability claims fail as a matter of law due to the applicability of the "gist of the action" doctrine. Counts Two, Three, and Four will be dismissed with prejudice.

C. **Count Five and Count Six will be dismissed.**

There are two forms of implied warranty in Pennsylvania: warranty of merchantability and warranty of fitness for a particular purpose. They arise by operation of law and serve to protect buyers from loss where the goods purchased are below commercial standards or unfit for a buyer's purpose. Goods are defined as follows:

> "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Division 8) and things in action. "Goods" also includes the unborn young of animals and growing crops and other identified things attached to realty as described in section 2107 (relating to goods to be severed from realty; recording).

13 Pa.C.S.A. § 2105(a). The implied warranty of merchantability "protect[s] buyers from loss where goods purchased are below commercial standards." *Barton v. Lowe's Home Ctrs., Inc.*, 124 A.3d 349, 357 (Pa. Super. 2015); *see also* 13 Pa.C.S.A. § 2314(b)(3). Goods need not be of the best quality, but "should ... be of reasonable quality within [the] expected variations and for the ordinary purpose for which they are used." *Id.* at 358. An implied warranty of fitness for a particular purpose arises "when the seller at the time of contracting has reason to know (1) any particular purpose for which the goods are required; and (2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods." 13 Pa.C.S.A. § 2315; *see also Gall ex rel. Gall v. Allegheny County Health Dep't*, 555 A.2d 786, 790 (Pa. 1989).

PNC argues that Emrit cannot sustain a claim under either theory as a matter of law because his former bank accounts are not "goods." The Court concurs. Count Five (Breach of Implied Warranty of Fitness for a Particular Purpose) and Count Six (Breach of Implied Warrant of Merchantability) fail as a matter of law, and they will be dismissed with prejudice.

### D. Count Seven will be dismissed.

With all due respect to Emrit, the Court cannot, even reading the Complaint in a light most favorable to Emrit, determine what claim he is raising in Count Seven, which alleges a

Breach of Banking and Usury Laws Affiliated With Federal Trade Commission (FTC), Consumer Financial Protection Board (CFPB), Federal Reserve, and Dodd-Frank. Emrit fails to cite to any federal or state statute, or plead any facts. This is not a situation where the Court can liberally read Count Seven to state a valid claim on which Emrit could prevail. Count Seven is completely devoid of any sound factual or legal basis to infer or assume that an actionable wrong has been committed against Emrit. In other words, Count Seven is insufficient as a matter of law to state a claim for relief. Given the incomprehensibility of this claim, and its clear lack of merit, Count Seven will be dismissed with prejudice.

### III.   CONCLUSION

The Court will grant PNC's Motion to Dismiss for Failure to State a Claim (ECF Nos. 8) by Order of Court to follow. Although amendment is to be liberally granted under Rule 15, leave to amend will not be granted here due to its futility and the fact that Emrit is litigating (or has unsuccessfully litigated) the same allegations against PNC in other district courts. All claims against PNC will be dismissed with prejudice, and this matter will be closed.

Lastly, a word of caution to Emrit is appropriate given his history as a vexatious litigant in other federal courts, and the fact that he filed five identical complaints against PNC in other district courts. The Court "and other federal courts are funded by the taxpayers of this country to adjudicate genuine disputes, not to function as playgrounds for would-be lawyers or provide an emotional release for frustrated litigants." *Harvey v. United States*, 149 Fed. Cl. 751, 775 (2020), *aff'd*, 845 F. App'x 923 (Fed. Cir. 2021) (quoting *Constant v. United States*, 929 F.2d 654, 659 (Fed. Cir. 1991)). The Court retains inherent power to place reasonable restrictions on Emrit's ability to file in this district in the future. Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), a district court may enjoin "abusive, groundless, and vexatious litigation." *Brow v.*

*Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993); *see also In re Oliver*, 682 F.2d 443, 445 (3d Cir. 1982). Accordingly, Emrit is hereby advised that abuse of the judicial process by filing meritless and repetitive actions in the Western District of Pennsylvania may result in the imposition of a filing injunction or other appropriate restrictions on his access to filing.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

\_\_2/7/22_____
Dated